# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

SELECTIVE INSURANCE COMPANY OF
AMERICA, as subrogee of
TOWN OF LODI,

             Plaintiff,             DECISION AND ORDER
v.                                      07-CV-6324

JOHN D. SWAREY,

             Defendant.

## Preliminary Statement

Defendant seeks to compel the production of certain documents produced by plaintiff during discovery that contain redactions based on an assertion by plaintiff that the redactions are protected as work product pursuant to Federal Rule of Civil Procedure 26(b)(3). By agreement of the parties, complete and un-redacted copies of the documents at issue were submitted to the Court for *in camera* review.

## Factual Background

On January 27, 2006, a Lodi Highway Department barn in Lodi New York was destroyed by fire. The cause of the fire is disputed by the parties. Plaintiff, Selective Insurance Company of America (hereinafter "Selective"), as subrogee of the Town of Lodi, claims the fire was caused by the defective installation of cellulose insulation by the defendant a few weeks before the fire. According

to plaintiff, defendant Swarey installed the insulation directly against a metal flu pipe for a large wood burning stove, which caused the insulation to ignite and start the fire. Defendant Swarey denied that the installation of the insulation was defective and claims that the fire was caused because the flu pipe itself was badly corroded with numerous holes. Indeed, according to the defendant, the Town of Lodi had actual notice that the corroded flu pipe presented a serious fire hazard years before the fire when the defect was discovered during a 2002 property inspection conducted by Selective. The defendant claims that after the inspection, Town of Lodi employees falsely represented to Selective that the flu pipe had been repaired when no such repairs had actually occurred. Selective paid the property claim filed by its insured and thereafter commenced this subrogation action against Swarey seeking compensation for damages caused by the fire.

During discovery, defendant sought a complete copy of Selective's underwriting file. Selective produced the entire file "with the exception of eight (8) redacted pages which contained information which was not part of the underwriting file, but were prepared in anticipation of litigation." See Plaintiff's Brief in Opposition (Docket # 44) at p. 2. According to Selective, the redactions consist entirely of file notes made by a subrogation adjuster. Selective argues these notes were not part of the claim file as they "were created solely for the purpose of anticipated

2

litigation against Mr. Swarey" and contain only "the adjuster[']s thoughts about the potential success of a case against Mr. Swarey." Id. at pp. 5-6. Selective provided a privilege log to defense counsel asserting that the redactions were prepared in anticipation of litigation and therefore were protected from disclosure pursuant to Federal Rule of Evidence 26(b)(3).

**Discussion**

Federal law controls the applicability of the work-product doctrine in all actions in federal court. Mount Vernon Fire Ins. Co. v. Try 3 Bldg. Servs., Inc., No. 96 CIV. 5590 MJL HBP, 1998 WL 729735, at *4 (S.D.N.Y. Oct. 16, 1998). Particularly when it comes to documents created by or for an insurance company, federal courts generally take a fact specific approach in determining the applicability of the doctrine. Because the very business of insurance companies is to investigate and evaluate claims that might erupt into litigation, "without some limiting principle virtually the entirety of an insurance company's files would be exempt from discovery." American Ins. Co. v. Elgot Sales Corp., No. 97 CIV. 1327(RLC), 1998 WL 647206, at *1 (S.D.N.Y. Sept. 21, 1998). Generally, "[a]n investigation that is undertaken to determine whether there is coverage, whether the claim should be paid, and whether a subrogation claim could be pursued, is not undertaken in anticipation of litigation." Nicklasch v. JLG

3

Indus., Inc., 193 F.R.D. 568, 570 (S.D. Ind. 1999).

This is not to say that the work product doctrine may not properly be invoked as to a claim-related document created by an insurance company. "[I]n the context of insurance company cases it has been recognized that at a certain point an insurance company's activity shifts from the ordinary course of business to anticipation of litigation." American Ins. Co. v. Elgot Sales Corp., 1998 WL 647206, at *1 (internal quotation and citation omitted). The relevant inquiry is "when the insurance company shifted its focus from collecting information and evaluating a claim to preparation for a lawsuit." Taroli v. Gen. Elec. Co., 114 F.R.D. 97, 99 (N.D.Ind. 1987), aff'd, 840 F.2d 920 (7th Cir. 1988). "Until that point, an investigation into the potential for subrogation is simply part of an insurer's ordinary practice of investigating all issues arising from an accident involving its insureds, and documents created as part of this process would have been created in the same form regardless of the insurer's eventual decision as to litigation." Weber v. Paduano, No. 02 Civ. 3392(GEL), 2003 WL 161340, at *8 (S.D.N.Y. Jan. 22, 2003); see also American Ins. Co. v. Elgot Sales Corp., 1998 WL 647206, at *2 (documents created after law firm was retained to investigate subrogation, but before subrogation decision was made, were not created in anticipation of litigation).

With these legal parameters in mind, the Court reviewed the

eight entries that were redacted. It appears to the Court that all of the entries were created at or after the decision was made to pursue subrogation litigation against Swarey. The first entry was created on March 14, 2006, and refers to the doctrine of "comparative negligence" in assessing the likelihood of recovery in a lawsuit. The next entry was created on May 11, 2006, and again refers to the chances of a lawsuit "recovery." The third entry was made on June 22, 2006, and specifically references conversations with "opposing counsel" and the subrogation adjuster's intention "to file suit and develope [sic] the case through discovery." Subsequent entries refer to the litigation process, the chances for recovery, arranging joint inspection of evidence with Swarey's lawyer, possible settlement with Swarey and conversations with Swarey's retained fire expert. All of these entries, and the fact that they contain strategic and tactical comments regarding possible litigation, confirm that they were made at a point where litigation was not only anticipated, but being actively planned. Accordingly, I find these entries to be materials properly withheld as work product prepared in anticipation of litigation.

There is, however, one document (Bates #P-02195) that appears to be different from the rest in that it is almost entirely factual, does not refer to anticipated litigation and, indeed, seems to be relevant to adjusting the underlying claim by the insured rather than any subrogation issue. In addition, this entry

5

contains facts about the 2002 loss control inspection for which defendant has substantial need. Therefore, I find Bates #P-02195 should be disclosed to defendant as it is not protected by the work product doctrine.

## Conclusion

With the exception of document designated Bates # P-02195, defendant's request to compel production of redacted documents is denied.

**SO ORDERED.**

/s/ Jonathan W. Feldman
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:  January 24, 2011
        Rochester, New York